**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00463-CR**
_____

**CAMERON CHARLES FRANK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 13-17766**

**MEMORANDUM OPINION**

Cameron Charles Frank appeals from a jury verdict, which resulted in his conviction for capital murder.[1] In one issue, Frank argues the evidence failed to prove beyond reasonable doubt that he intentionally caused Kendra Ureka Crump's death while in the course of committing or attempting to rob her. In his brief, Frank

---

[1] Tex. Penal Code Ann. § 19.03(a)(2).

argues his conviction "necessarily relies on speculative views of the evidence[,]" which merely raises a "suspicion of guilt[.]" We disagree and affirm the trial court's judgment.

## Background

It was undisputed in the trial that in August 2013, Crump died from a gunshot wound she suffered while in a hotel room with four others in Beaumont, Texas. Joseph Smith,[2] Sherry Lee, Aaron Cotton, and the defendant, Frank, were with Crump when she was shot.

Cindy Brown[3] was one of the most important witnesses the State called in its case. According to Brown, she waited for Frank and Cotton in a car parked at the hotel while they went to the room where the murder occurred. Brown gave a statement to the police the night the murder occurred. In it and at trial, Brown testified that when Frank and Cotton returned to the car, Frank said "I shot her. I shot her. I shot her." Brown explained Frank and Cotton had a wallet and a cell

---

[2] Smith and Lee, two of the individuals in the hotel room with Crump, are pseudonyms. We use those names in lieu of using their actual names. *See* Tex. Const. art. I, § 30(a)(1). During his testimony, Frank identified Cotton as his "associate." While Cotton was also in the room when the alleged murder occurred, he was not called as a witness in Frank's trial.

[3] A pseudonym.

phone with them that they took from the room. According to Brown, when Frank returned to the car he said he "forgot the gun upstairs in the room."

Viewed in the light most favorable to the jury's verdict,[4] the jury could have reasonably relied on the following evidence together with the testimony we have already described to convict Frank of capital murder.

- Brown testified that she, Frank, and Cotton, were riding around in Frank's car when Frank decided they needed a gun. Frank told Cotton where he had a gun, and Cotton retrieved it from Frank's house. According to Brown, she heard Frank and Cotton discuss wanting to "hook up with" some prostitutes and rob them. The men asked Brown to help, but she "told them no."

- Frank drove Cotton and Brown to a local hotel. While Brown waited near the car, Frank and Cotton left for room 101, where they met Lee and Crump.

- According to Lee, Crump and Lee were in room 101 when Lee's phone rang. Crump answered Lee's phone and invited Frank and Cotton to room 101.

- According to Smith, as he was returning to room 101, he saw another person enter the room. When he went inside, he realized the women were working, so he left because whatever they were doing was "none of [his] business." When Smith turned to leave, someone hit him in the back of the head, and he fell to his knees. When he tried to stand up, someone hit him again. The second blow knocked him out. When Smith heard a gunshot, he regained consciousness.

---

[4] *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (explaining that "the reviewing court is required to defer to the jury's credibility and weight determinations" when reviewing challenges defendants raise in appeals complaining the evidence does not support the factfinder's verdict).

- Lee testified that she saw Frank hit Smith with a gun and that Frank pointed a gun at them. While Smith was unconscious, Lee saw Frank "going through" Smith's pockets. Lee denied that she emptied Crump's purse in room 101.

- According to Smith, when he regained consciousness, he saw Frank standing over him holding a gun. He also heard Crump scream, "[h]e shot me. He shot me." Smith explained that after noticing the gun, he grabbed Frank and they began to wrestle over the gun.

- During the trial, Smith identified Frank as the man who hit him in the head and as the man he saw holding a gun.

- The trial court admitted the recording of the call Lee placed to 911. In it, Lee asks for an ambulance and states that two men came into her hotel room. Lee testified she saw the larger of the two men hit Smith in the head. Other testimony established that Frank was significantly larger than Cotton.

- One of the police officers who was dispatched to the hotel after the shooting testified that, when he entered room 101, he noticed the contents of a purse on the floor.

- During their investigation, the police recovered Smith's nine-millimeter handgun, a fully-loaded magazine for a nine-millimeter gun, and two .380-caliber spent shell casings from room 101.

- Two days after Smith was assaulted while in room 101, the police learned that Smith had thrown a gun, possibly the one used in the shooting, inside a fenced area near the bottom of the stairwell leading to room 101. Smith showed the police the location of the gun. At trial, Smith explained he picked up the gun before leaving room 101 because he feared he might need it to defend himself from another assault. According to Smith, after taking the gun, he decided to dispose of it because he thought the police might consider him a suspect if they found him with a gun.

- Although the police located the handgun Smith removed from room 101, they never found the magazine for the gun. Brown told police the gun's magazine "got thrown in a waterway" on a nearby road. The detective who located the

4

gun Smith took from room 101 identified it as a Hi-Point, .380 caliber handgun. Although the police found pawn shop records identifying the name of the individual who owned the .380 caliber gun, the owner never contacted the police. According to one of the officers, the handgun's owner was not known to have any relationship with the individuals involved in the events in room 101.

- The investigation revealed that Smith's DNA was on the .380 caliber handgun. That evidence is consistent with the State's theory that the .380 caliber handgun was the weapon Frank used to knock Smith out. During their investigation, the police recovered a blood-stained shirt from Frank's home. According to a forensic scientist employed by the Texas Department of Public Safety's crime lab in Houston, the DNA analysis of the blood showed the shirt contained Smith's blood.

- A detective involved in the investigation interviewed Frank after police arrested Frank for Crump's murder. At the beginning of the interview, Frank denied he went to the hotel where Crump was shot. After the detective told Frank he knew of witnesses that would place Frank at the hotel, Frank admitted he and Cotton went to the hotel and were involved in an altercation in room 101.

Standard of Review

Frank argues the evidence the jury considered was insufficient to show that he is the person who shot Crump. In the appeal of a criminal case, we review the evidence in the light that favors the verdict and determine whether the evidence the jury considered reasonably supports the jury's verdict beyond reasonable doubt.[5] This standard "recognizes the trier of fact's role as the sole judge of the weight and

---

[5] *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks*, 323 S.W.3d at 902.

5

credibility of the evidence after drawing reasonable inferences from the evidence."[6] As a reviewing court, our role is to determine "whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence."[7]

In our review, we presume the jury resolved any conflicts that may exist in the evidence in a manner that supports the jury's verdict if the manner the jury resolved any conflicts in the testimony was reasonable.[8] Thus, the standard of review is deferential to the jury's right as the factfinder in the case to decide what evidence is (or is not) credible.[9] And, the jury is given wide latitude to decide what weight to give the evidence in a trial.[10] Put another way, we may not sit as a thirteenth juror in the appeal and substitute our view of the evidence for the view the jury adopted when it reached its verdict.[11]

---

[6] *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

[7] *Id.*; *see also Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012).

[8] *Brooks*, 323 S.W.3d at 922; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[9] *See Brooks*, 323 S.W.3d at 899.

[10] *Id.*

[11] *Id.*

Here, the State and Frank disagree about the logical inferences the jury should have drawn from the evidence admitted at trial. But if two reasonable views of the evidence exist—one that allows the jury to convict and the other to acquit—we must defer to the jury's verdict.[12] That said, a jury cannot arrive at its verdict on "mere speculation or factually unsupported inferences or presumptions."[13]

While the State must prove the defendant committed the crime beyond reasonable doubt, the evidence of the defendant's guilt need not necessarily include testimony of an eyewitness to the crime.[14] Generally, evidence is sufficient to support a defendant's conviction if it points "directly and independently to the defendant's guilt."[15] The evidence needed to support a defendant's conviction is sufficient if "the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[16]

---

[12] *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006).

[13] *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

[14] *See id.*

[15] *Id.* at 13 (cleaned up).

[16] *Id.*

## Analysis

By indictment, the State alleged Frank intentionally caused Crump's death while in the course of committing or attempting to rob her.[17] A person commits capital murder when he intentionally causes the death of an individual in the course of committing or attempting to commit a robbery.[18]

Viewed in the light most favorable to the verdict, the evidence allowed the jury to conclude Frank and Cotton went to room 101 to rob the women they arranged to meet there. The testimony shows that Frank went through Smith's pockets while Smith was unconscious. The police found the contents of Crump's purse on the floor, evidence the jury could have reasonably viewed as evidence consistent with the State's theory that robbery was the motive for the murder. Based on the above evidence and Brown's testimony that Frank and Cotton were talking about robbing people that night, the jury could have concluded Frank and Cotton intended to rob the individuals they encountered in room 101.

Other evidence in the trial allowed the jury to conclude Frank fired the gun that caused Crump's death. During the trial, Smith testified he saw Frank holding a

---

[17] Tex. Penal Code Ann. § 19.03(a) *see also id.* § 19.02(b)(1) (explaining murder occurs when a person intentionally or knowingly causes the death of another).

[18] *Id.* §19.03(a)(2).

handgun when he regained consciousness. Smith testified that he saw the gun immediately after he heard gunfire and heard Crump cry out that she had been shot. That evidence, while circumstantial, allowed the jury to conclude that Frank shot Crump. Smith's testimony also allowed the jury to tie the .380 caliber handgun found near the stairs to the weapon used to shoot Crump. For example, Brown's testimony established Frank and Cotton got a gun before they went to the hotel. When Frank returned to the car, he told Brown he left a gun in room 101. Police found two .380 caliber shell casings in room 101, evidence consistent with a .380 caliber handgun being fired there. And, a pathologist testified that Crump was killed by a bullet fired by a gun. Of the two handguns tied to room 101, the jury could reasonably conclude that a .380 caliber gun was the only weapon fired in the room.

Finally, Frank told Brown he shot Crump the night Crump's murder occurred. When viewed in the light that favors the verdict, the evidence, when taken as a whole, allowed the jury to convict Frank of capital murder.

Frank points to his own testimony and to what he argues are gaps and inconsistencies in the evidence to support his claim that the State failed to meet its burden of proof. But the State need not rebut every reasonable hypothesis of

innocence to prove a defendant committed a crime.[19] And while Frank testified at trial that he did not shoot Crump and he was not trying to rob anyone, the jury had the right to judge his credibility and determine he was not credible.[20]

As a reviewing court, we must give deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" to reach a verdict in a trial.[21] In Frank's case, the parties presented two conflicting theories to explain Crump's death. Under Frank's theory, Cotton and Smith became involved in an altercation, a gun fired by either Cotton or Smith went off, which fatally wounded Crump. Under the State's theory, Cotton and Frank went to room 101 to rob Crump. While there, Frank knocked Smith out, shot Crump, and then fought with Smith for control of the .380 caliber handgun.

---

[19] *Geesa v. State*, 820 S.W.2d 154, 159, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

[20] *See Jackson*, 443 U.S. at 319; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

[21] *Jackson*, 443 U.S. at 318-19.

By its verdict, the jury clearly accepted the State's theory of the case. That decision was rational: the jury had the right to decide Frank lied to it about what happened in room 101 given the other evidence the jury heard in Frank's trial.[22]

Viewing the evidence before the jury under the *Jackson* standard, we reject Frank's argument alleging there is insufficient evidence in the record to support his conviction for capital murder. For the reasons explained above, the judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on April 16, 2019
Opinion Delivered December 4, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[22] *See Clayton*, 235 S.W.3d at 779-82 (explaining how the jury rationally chose between two opposing theories to convict the defendant of murder).